BEVERLY ANN FRANZEN, plaintiff-appellee, v. DIMOCK GOULD & Co., a corporation, defendant-appellant, and CITY OF BETTENDORF, defendant-appellee.

CITY OF BETTENDORF, cross-petitioner-appellee, v. DIMOCK GOULD & Co., a corporation, cross-defendant-appellant.

No. 49877.

(Reported in 101 N.W.2d 4)

744

FEBRUARY 9, 1960.

REHEARING DENIED APRIL 8, 1960.

Kopf & Christiansen, Clarence H. Christiansen and Marvin J. Christiansen, of Davenport, for cross-defendant-appellant.

Betty, Neuman, Heninger, Van Der Kamp & McMahon, Richard M. McMahon, of Davenport, for plaintiff-appellee.

McDonald & McCracken, Elliott R. McDonald, Jr., of Davenport, for cross-petitioner-appellee.

GARRETT, J.—Beverly Ann Franzen was injured in a fall on an icy private driveway across a public sidewalk in the City of Bettendorf. She sued the City and Dimock Gould & Company, a corporation, owner of the parking lot in connection with which the driveway was used.

After being served with notice of the action, the City served notice upon the Dimock Gould & Company under section 368.34 of the 1954 Code of Iowa to appear and defend for the City. The company, hereinafter referred to as appellant, refused to defend for the City but defended in its own behalf. The trial resulted in a verdict against the City and appellant for $4750.

The question of the City's right to indemnity from appellant was reserved for determination by the court as a question of law and on April 20, 1959, the court entered judgment for the City on its cross-petition against appellant.

There is no dispute here as to the time, place, cause and severity of plaintiff's injuries. The City did not appeal. It is appellant's contention the trial court erred in refusing to direct a verdict for it and against plaintiff and the City on grounds hereinafter mentioned. The appeals from the verdict and judgment for plaintiff and judgment in favor of the City were ordered joined.

I. It is claimed the court erred in refusing appellant's motion for a directed verdict on the ground plaintiff's petition failed to state a cause of action against it in that no acts charged were actionable grounds of negligence.

The petition alleged that as a result of much vehicular traffic controlled by appellant "a considerable amount of snow, slush and ice was deposited upon the public sidewalk in question with the knowledge and consent and under the direction of * * * [appellant] which snow, slush and ice became slippery, uneven and rough and thus resulted in a dangerous condition and nuisance and endangered the safety of pedestrians walking on said public sidewalk." It further alleged that plaintiff fell and sustained her injuries while "walking on the sidewalk at the place in question where the driveway of * * * [appellant] crosses said sidewalk and where large deposits of snow, slush and ice had wrongfully been allowed to accumulate in a rough, uneven, slippery and unsafe condition on the public sidewalk by the defendant Dimock Gould & Co." The other usual and necessary allegations were present. We hold the petition stated a cause of action.

■ Without the aid of a brief and argument on behalf of plaintiff-appellee, we find ample authority sustaining her position. The liability of the City is based upon its statutory duty to keep its streets "open and in repair and free from nuisances." Section 389.12, Code, 1954. The property owner's liability in such cases is based upon his negligence in creating and maintaining a dangerous condition or nuisance causing the damage. City of Des Moines v. Barnes, 238 Iowa 1192, 1199, 30 N.W.2d 170; 43 C. J., Municipal Corporations, sections 1864, 1865; 42 C. J. S., Indemnity, section 22; 25 Am. Jur., Highways, section 392; 27 Am. Jur., Indemnity, sections 18, 19.

■ Where an abutting property owner's negligence creates an icy condition on a sidewalk, the liability of the property owner and of the City, as between themselves, to one who is injured thereby, may be primary and secondary respectively. This is important as the City has a right of action against the property owner whose negligent acts cause the damage. They are not joint tort-feasors.

Section 368.34 provides: "Notice to person liable over. When any action is brought against a municipal corporation for personal injuries alleged to have been caused by its negligence, said municipal corporation may notify in writing any person or corporation by whose negligence it claims the injury was caused. Said notice shall state the pendency of said action, the name of the plaintiff, the name and location of the court where the action is pending, a brief statement of the alleged facts from which the cause arose, that said municipal corporation believes that the person or corporation so notified is liable to it for any judgment rendered against said municipal corporation, and asking such person or corporation to appear and defend. Thereupon, any judgment obtained in such suit shall be conclusive in any action by the municipal corporation against any person or corporation so notified, as to the existence of the defect or other cause of the injury or damage, as to the liability of the municipal corporation to the plaintiff in the first named action in consequence thereof, and as to the amount of the damage or injury occasioned thereby; and every such municipal corpora-

tion is hereby empowered to maintain an action against the person or corporation so notified to recover the amount of any such judgment together with all the expenses incurred by such municipal corporation in such suit."

This section "does not create the liability of the property owner in cases of this kind. That liability exists at common law. 42 C. J. S., Indemnity, section 22; 25 Am. Jur., Highways, section 392; 27 Am. Jur., Indemnity, sections 18, 19. But the statute does provide a method whereby any judgment rendered against the city will be held conclusive against the property owner as to the matters therein specified. The procedure is at least analogous to the common-law process of voucher whereby an impleaded warrantee brings in his warrantor as the real party and makes him defend the action. 67 C. J., Voucher, 279, 280." City of Des Moines v. Barnes, supra; Ahern v. City of Des Moines, 234 Iowa 113, 12 N.W.2d 296.

Appellant cites Atkinson v. Sheriff Motor Co., 203 Iowa 195, 196, 197, 212 N.W. 484. In that case injuries resulted from a fall upon a sidewalk in which a slight depression had resulted from long-continued vehicular traffic. "It is a general rule, almost universally recognized, that an owner or tenant in the occupancy of a building abutting upon a public sidewalk or street who, by some affirmative act, or perhaps by some act of negligence, creates a nuisance, is liable to persons injured in consequence of such nuisance. City of Ottumwa v. Parks, 43 Iowa 119; Calder v. Smalley, 66 Iowa 219; Edwards v. Hasel, 157 Iowa 416; 2 Elliott on Roads and Streets (3d Ed.), Section 899, and cases cited. * * * It did not result from the affirmative act of the servants or agents of appellee, nor was it the result of negligence on its part." See also Clarke v. Hubbell, 249 Iowa 306, 86 N.W.2d 905; Case v. City of Sioux City, 246 Iowa 654, 69 N.W.2d 27.

An abutting owner is not liable to pedestrians who sustain injuries by falling on snow or ice which occurs naturally on a public sidewalk, nor is he liable for injuries sustained by reason of the sidewalk being in a dangerous condition from ordinary wear and tear or action of the elements. Mutzel v. Northwestern Bell Tel. Co., 247 Iowa 14, 72 N.W.2d 487, and cases cited.

We do not hold that the ordinary use of a private driveway in the ordinary manner may in all cases create a nuisance or legal hazard even though the natural surface of snow and ice thereon may be slightly changed. Whether or not a dangerous situation or nuisance is created thereby is a question for a jury to determine under proper instructions, as in this case, where, according to the jury's verdict, snow and slush not originally there were deposited on the crossing in substantial amounts and made hazardous by vehicles of the defendant, its employees and customers.

If a private residential driveway across a public sidewalk were involved and if it were used as such driveways are ordinarily used and no unusual or unnatural hazard were created other than necessarily accompanies normal use we would be disposed to hold otherwise. We are inclined to say that a slick or rough spot on a private driveway, resulting from normal and natural use, where negligence is not involved, would not support a verdict for plaintiff.

The common law imposed no duty upon abutting property owners to keep the sidewalks in front of their premises free from ice and snow accumulated thereon in the natural way. Mutzel v. Northwestern Bell Tel. Co., supra; Bentson v. Berde's Food Center, 231 Minn. 451, 44 N.W.2d 481, 22 A. L. R.2d 733, 736, 737. The same rule prevails in Iowa. Atkinson v. Sheriff Motor Co. and Case v. City of Sioux City, both supra.

II. Appellant insists there was no evidence to show the use of the sidewalk was not normal and lawful, and that there was not sufficient evidence to take the case to the jury on the question whether appellant caused the condition complained of and whether it failed to warn plaintiff of the condition or exercised control over the walk at the place in question.

We consider the evidence was sufficient to go to the jury. It is undisputed the most recent snowfall had been some twelve days prior to the accident and this walk, except at the driveway and possibly a spot here and there, was clear of snow and ice.

Plaintiff's Exhibit 1 herein reproduced, being a photograph of the crossing, taken the day following the accident, conditions

being the same, is a most forceful witness in her behalf. The "X" thereon marks the spot where plaintiff fell.

750

The evidence is that the entire walk, including this crossing, had been cleared of snow soon after the heavy fall about twelve days before. The situation disclosed by Exhibit 1 was brought about by the trucks and cars of appellant, its employees and customers and was allowed to remain potentially dangerous. The jury could find from the evidence that snow and slush were carried from appellant's parking lot and from the street, deposited on this public walk and left there to constitute a hazard to pedestrians. The picture is substantial evidence that appellant and those under its control affirmatively caused and maintained an artificial and dangerous condition which was the cause of plaintiff's injuries. Plaintiff testified regarding the ice and snow, "It was rough and real bumpy and dirty. In fact, when I fell, that is when I realized how bad it was, * * *. It had accumulated there for a few days."

Plaintiff's father testified: "As I say, there was a considerable amount of ice and snow there, and it was very rough. * * * It looked like to me it was something had been there quite awhile. It was dirty accumulation of something that had been there several days. * * * I mean there was spots, but on the driveway just about the whole width there it was very heavy accumulations."

Appellant's manager testified regarding the sidewalk: "A. Well the last time they shoveled it was the morning after the heavy snow we had. * * * Q. It needed no work on the sidewalk from the time of that heavy snow, which was New Year's Eve, I believe? A. I think it was. [Plaintiff fell on the night of January 12, 1958.] * * * Q. But you didn't have to do any shoveling after the New Year's Eve six-inch snowfall up to the time of the accident? A. Not that I recall. We got the snow all removed in good shape." The record furnishes ample support for the verdict in favor of plaintiff.

Appellant claims the court erred in allowing judgment against it on the cross-petition of the City, taking the position that a municipality cannot have indemnity against an abutting property owner for injury to a third person where that person cannot recover from the property owner. The abstract proposition is correct. Holding as we do, however, that plaintiff pleaded

and proved a valid cause of action against appellant, the abstract proposition has no application here. The rights of the City, cross-petitioner, are fixed by the common law and section 368.34, Code, 1954, which provides that "every such municipal corporation is hereby empowered to maintain an action against the person or corporation so notified to recover the amount of any such judgment * * *." The City's cross-petition stated a cause of action against appellant and, although the City introduced no evidence, sufficient evidence was introduced to sustain the City's common-law right to indemnity from appellant. Its action being for indemnity in case of judgment against it in plaintiff's suit, it need not plead all the matters plaintiff must plead and prove.

██ Appellant, in its brief and argument, states: "A municipality is entitled to indemnity from a third party, as to a judgment rendered against the municipality for an injury growing out of a defect in, or an obstruction to, a sidewalk, where the defect or obstruction was created by an affirmative act of negligence on the part of the third person." It cites City of Des Moines v. Barnes, supra; and other cases. We are in entire accord with the statement and the authorities cited. We believe they support appellee's position in this case.

Appellant cites 37 Iowa Law Review 517, 525. We quote therefrom, "* * * it may be said that the Iowa Supreme Court will uphold an award of indemnity to a municipality where it has been held liable for an injury growing out of a defect in, or an obstruction to, a street or sidewalk created by an affirmative act of negligence on the part of a third person. An adjoining landowner is not liable over to the city for defects in streets or sidewalks created by natural conditions or by strangers."

██ III. Appellant challenges the notice served under section 368.34. We hold the notice served was sufficient. The section provides "said notice shall state the pendency of said action, the name of the plaintiff, the name and location of the court where the action is pending, a brief statement of the alleged facts from which the cause arose, that said municipal corporation believes that the person or corporation so notified is liable to it for any judgment rendered against said municipal

corporation, and asking such person or corporation to appear and defend." The notice stated: "Under and by virtue of Section 368.33 of the Iowa Code, you are liable to the City of Bettendorf in the event that any verdict should be rendered against said City in this notice is being served in accordance with Section 368.34 of the Iowa Code." The statute says the notice shall state "said municipal corporation believes that the person * * * notified is liable * * *." The notice served said "Under * * * Section 368.33 * * * you are liable to the City of Bettendorf." The assertion "you are liable" is as effective for the purposes of the notice as would be the statement the "municipal corporation believes" you are liable. The statement "Under and by virtue of Section 368.33 * * * you are liable" was incorrect as that section creates no liability in favor of the City, but, taking the notice as a whole it was sufficient. It stated: "* * * this notice is being served in accordance with Section 368.34" which bears the title "Notice to person liable over." Appellant appeared and defended and was in no way prejudiced by the form of the notice.

We find no reversible error. The verdict and judgment in favor of the plaintiff and the judgment in favor of cross-petitioner are affirmed.—Affirmed.

LARSON, C. J., and BLISS, HAYS, PETERSON, and THORNTON, JJ., concur.

OLIVER, GARFIELD and THOMPSON, JJ., dissent.

OLIVER, J. (dissenting)—I respectfully dissent, and would hold the evidence insufficient to support a finding of liability on the part of appellant for damages or indemnity stemming from plaintiff's injuries.

I. Appellant, Dimock Gould & Company, was in the lumber and building material business at Bettendorf. The driveway across the concrete sidewalk, upon which plaintiff fell, served as an entrance to its lumberyard and also to a parking lot furnished by appellant for its customers but used regularly by its employees and also, without its actual permission or objection, used frequently by some members of the general public. The

most frequent use of the driveway was by appellant's three trucks and trucks and automobiles of its customers. The driveway was used also, to a much lesser extent, by vehicles of patrons of two veterinarians who had an office adjacent to the parking lot. At times cars were parked in its parking lot by customers of a neighboring drugstore and on Saturday afternoons and Sundays, when appellant's business was always closed, by some members of the general public.

December 31, 1957, there had been a heavy fall of snow in Bettendorf. Shortly thereafter employees of appellant had cleared the snow from the sidewalk in front of appellant's property, including the part crossed by the driveway. Sunday evening January 12, 1958, there was an explosion and fire in a building near by. Plaintiff, Beverly Ann Franzen, went to the scene of the explosion. Police officers, who were roping off the street, requested spectators to step back and plaintiff started to leave. She took from two to four steps and fell upon the rough and dirty ice or frozen slush which then covered the surface of the sidewalk where the driveway crossed it.

This happened Sunday between 9:30 and 10 p.m. Appellant's lumberyard had then been closed approximately thirty-three hours. A short time after the explosion one of appellant's employees went to the lumberyard. He testified he saw about six automobiles parked in appellant's parking lot, none of which belonged to appellant or any of its employees.

There was evidence the accumulation of snow and frozen slush on the driveway the day after the accident was much heavier than on other parts of the sidewalk and that some water had been splashed on the sidewalk by vehicles passing in the street. A photograph placed in evidence was taken in the afternoon of the day following plaintiff's fall, at a time when the temperature was above freezing. It shows what appears to be a pool of water in the street along the edge of the sidewalk, and on the driveway, at the place where plaintiff fell, slush or ice, cut and roughened by wheel tracks.

The only evidence concerning the condition of the driveway across the sidewalk Saturday noon when appellant closed its

business was that it was then clean and was not in the condition shown by the photograph.

From then until Monday morning the driveway was not used by vehicles of appellant, its employees or its customers. Hence, the record does not show the condition of the surface of the driveway at the time plaintiff fell upon it was caused by such vehicles or any of them. Moreover, there is no evidence the use appellant made of the driveway at any time was unreasonable or improper. As an abutting owner it had the right to use the driveway for access to the city street.

The majority opinion states:

"The situation disclosed by Exhibit 1 was brought about by the trucks and cars of appellant, its employees and customers * * *. The jury could find from the evidence that snow and slush were carried from appellant's parking lot and from the street, deposited on this public walk and left there to constitute a hazard to pedestrians. The picture is substantial evidence that appellant and those under its control affirmatively caused and maintained an artificial and dangerous condition which was the cause of plaintiff's injuries."

I have pointed out that the evidence showed no trucks or cars of appellant, its employees and customers had used the crossing since Saturday noon. Nor have I been able to find any evidence that snow or slush was carried from the parking lot and the street, deposited on the walk and left there to constitute a hazard for pedestrians. However, I agree the snow or slush was probably carried onto the crossing by some vehicles of the public which used the parking lot on Saturday afternoon and Sunday. The evidence shows the crossing was clean Saturday morning.

The statement that the condition shown by the picture is evidence of the maintenance of an artificial and dangerous condition is contrary to the great weight of authority, to which I will hereinafter refer.

The majority opinion quotes also a statement by plaintiff: " 'It [the snow and ice] had accumulated there for a few days.' " In this connection she testified repeatedly she did not notice

any snow and ice at that place until she fell and felt it and that it was thick and rough and bumpy and real dirty. This was the only basis for her repeated conclusion it had accumulated there for a few days. There was no testimony either plaintiff or her father, who went there the morning after the accident, had seen the place after the snow and prior to the accident.

So much for the record concerning which my disagreements with the majority opinion seem less serious than with the basic legal proposition. This phase of the dissent will give consideration to each case listed in the majority opinion.

II. An abutting owner is not liable at common law for injuries to a pedestrian resulting from snow or ice coming on a sidewalk through natural causes, or where it accumulates through no wrongful act or omission on his part. This general rule has not been changed by statute. Case v. City of Sioux City, 246 Iowa 654, 69 N.W.2d 27. That decision, which is cited in the majority opinion, states authorities agree statutes or ordinances requiring abutting owners to remove snow from sidewalks and keep them in repair enable the city to make the repairs and charge the cost to the owner but do not subject such owner to liability for bodily injury caused a wayfarer by violations of such statutes or ordinances.

However, Case v. Sioux City, supra, concluded the pleaded allegation " 'defendants' negligently attempted to repair the defective sidewalk", while not very clear, was sufficient to charge defendant abutting property owner with the affirmative act of repairing the defective sidewalk, negligently performed. On this ground that decision held the allegations of the petition sufficient to state a cause of action against the abutting owner for damages for injuries suffered by a pedestrian.

An Article in 8 Drake Law Review No. 2, pages 149 to 155, entitled Injuries From Ice and Snow on Sidewalks, considers, A. Liability of the Municipality, and B. Liability of the Adjacent Property Owner. At page 155 it summarizes the effect of certain decisions of this court, as follows:

"Thus, the duty of a municipality to use reasonable care to keep its sidewalks reasonably safe is one resting primarily on

it, and cannot be delegated to abutting owners so as to relieve the municipality of liability. * * *

"* * * it seems that the Iowa Court will uphold an award of indemnity to a municipality which had been held liable for an injury growing out of a defect in, or an obstruction to, a street or sidewalk created by an affirmative act of negligence on the part of a landowner."

Clarke v. Hubbell, 249 Iowa 306, 310, 86 N.W.2d 905, 907, cited in the majority opinion states:

"Liability of the abutter for his affirmative acts usually finds application in cases where he builds an excavation or barrier in or near the sidewalk or constructs a downspout from a building that discharges water on the walk."

The majority opinion cites such downspout cases as City of Des Moines v. Barnes, 238 Iowa 1192, 30 N.W.2d 170; Ahern v. City of Des Moines, 234 Iowa 113, 12 N.W.2d 296.

Atkinson v. Sheriff Motor Co., 203 Iowa 195, 196, 197, 212 N.W. 484, states:

"It is a general rule, almost universally recognized, that an owner or tenant in the occupancy of a building abutting upon a public sidewalk or street who, by some affirmative act, or perhaps by some act of negligence, creates a nuisance, is liable to persons injured in consequence of such nuisance. [Citations] Instances in which this rule has been applied are numerous, and include excavations and obstructions in streets and highways, coal holes, basement areas, and excavations near highways, falling buildings, negligence in building, and many other instances of like character. [Citations]."

The majority opinion quotes the first part of the foregoing statement but omits the last sentence which clarifies the meaning of the term "an affirmative act" as used by the court in these cases.

The Iowa cases listed in the Atkinson quotation set out in the majority opinion are City of Ottumwa v. Parks, 43 Iowa 119, an excavation in a sidewalk area not fully guarded; Calder v. Smalley, 66 Iowa 219, 23 N.W. 638, 55 Am. Rep. 270, a scuttle hole in a sidewalk, and Edwards v. Hasel, 157 Iowa 416, 138 N.W. 501, a two-inch plank covering a grating over a cellar

window and extending 18 inches from the building. Obviously, the defect in each of these cases was caused by "an affirmative act."

In Mutzel v. Northwestern Bell Tel. Co., 247 Iowa 14, 15, 16, 72 N.W.2d 487, 488, an icy sidewalk case cited in the majority opinion, the petition alleged defendant-abutter " 'was negligent in that it maintained and allowed to exist the fence described * * *, which fence caused the snow to pile up on the sidewalk * * *, all of which Defendant Company well knew.' " In sustaining the order of the trial court dismissing the petition for the reason it did not state a cause of action, the court stated (page 17 of 247 Iowa) :

"* * * Except where it is shown the accumulation of snow on a public walk and the subsequent ice thereon was the result of some artificial act on the part of the abutting owner, there is no liability on such owner."

The Mutzel case states (page 18) :

"A property owner does not have charge of, or control over, a public sidewalk and consequently the owner of adjacent property owes no duty to a pedestrian to clear or make safe for walking, ice and snow which had naturally accumulated on the sidewalk in front of it, unless a statute validly imposes that duty."

Among the authorities cited by Mutzel in support of this statement is Abar v. Ramsey Motor Service, Inc., 195 Minn. 597, 601 to 603, 263 N.W. 917, 919, which involved the fall of a pedestrian on a driveway across a sidewalk upon which were lumps or ridges of ice, or packed snow. There was evidence that, as automobiles passed over it into defendant's place of business, not only was the snow packed down, but also ice would fall off the cars onto the walk. A verdict was directed for defendant and plaintiff appealed. In affirming the judgment the court stated:

"The real merit of the appeal depends on whether the defendant, the abutting owner, was liable for the condition of the sidewalk where plaintiff slipped and fell. The duty of keeping the sidewalk in a reasonably safe condition for travel

is placed on the city and not upon abutting owners or occupants. [Citations] Plaintiff's counsel concedes that such is the settled law in this state. But the contention is that the evidence made it a jury question whether defendant was responsible for the ridge or clump of ice upon which plaintiff fell by allowing its customers' cars to pass over the sidewalk and track down the snow and slush thereon, and also that by removing the snow and ice in spots only, a danger was created which caused plaintiff's fall. That there is a driveway over a sidewalk into the abutting occupant's premises cannot lay the burden on the occupant to keep the driveway clear of snow or ice any more than the part of the sidewalk where there was no driveway. * * *

"The defendant could not be held guilty of maintaining a nuisance by having a driveway into its premises. Where it passed over the sidewalk it was level with the sidewalk. There is no suggestion that its surface was different from that of any other part of the walk."

Another decision approved by the Mutzel case is Bamberg v. Bryan's Wet Wash Laundry, Inc., 301 Mass. 122, 123, 16 N.E.2d 653, 654, from which Mutzel quotes, in part as follows: " 'The owner or occupant of premises abutting on a public way is under no obligation to keep the sidewalk free of snow or ice which came there from natural causes.' " In Bamberg, deep ruts in the snow on defendant's driveway across the sidewalk were created by trucks of a coal company delivering coal to defendant. These ruts froze and were the cause of plaintiff's fall. The court held there was no evidence of negligence.

Bennett v. McGoldrick-Sanderson Co., 15 Wash.2d 130, 142–144, 129 P.2d 795, 800, states in part:

"* * * While there was evidence of tracks made by automobiles, there was no evidence that any of the snow or ice upon the sidewalk at the time of respondent's accident was deposited there in the manner claimed.

"But even if the record supported all of respondent's claims in this connection, there would still be no basis for holding appellant liable. Appellant had the right to construct a driveway across the sidewalk in order to afford proper access to its

premises. The driveway here involved was of the kind usually found in connection with filling stations, and it satisfied all the building requirements of the city of Spokane. Appellant also had the right to have its customers use the sidewalk in this way, and so long as such use was normal and reasonable it entailed no liability to pedestrians who might be injured due to an icy condition of the sidewalk caused or aggravated by the passage of automobiles across it.

" 'In the present day of the prevalence of the automobile it is perhaps the exceptional dwelling or business place that does not have for the use of its owner or occupant a crossing from the vehicle portion of the highway into its premises crossing the sidewalk, usually over paving built specially for the purpose. Such construction and use, however, are recognized as normal and lawful ones. If the law were as contended for by the appellant it would follow that an owner of property could not so construct or use the sidewalk, usually the only means of access, without incurring an obligation to correct the slippery condition to which his vehicles had contributed, and incurring liability to anyone who happened to slip thereon. As well might the pedestrian be called upon to correct the like condition resulting from the prints of his shoes.' Den Braven v. Public Service Electric & Gas Co., 115 N. J. L. 543, 181 A. 46, 47.

"See, also, Massey v. Worth, 9 W. W. Harr., Del., 211, 197 A. 673; Bamberg v. Bryan's Wet Wash Laundry Inc., 301 Mass. 122, 16 N.E.2d 653; McDonough v. City of St. Paul, 179 Minn. 553, 230 N.W. 89; Abar v. Ramsey Motor Service, Inc., 195 Minn. 597, 263 N.W. 917. These cases make it clear that a property owner is not liable to a pedestrian who falls upon the sidewalk adjacent to his property merely because a driveway has been constructed across the sidewalk at the point where the accident occurred. And this is true whether it is charged that the automobiles using the driveway have merely packed down naturally accumulated snow, or that they have also carried ice in and deposited it upon the sidewalk."

In Den Braven v. Public Service Electric & Gas Co., 115 N. J. L. 543, 544, 545, 181 A. 46, 47, supra, the complaint was the sidewalk fronting defendant's premises had been covered

by a snowfall, defendant used the premises for the ingress and egress of its motor busses and other vehicles through a driveway crossing the sidewalk, such use had caused the snowy condition of the driveway to become icy and slippery, and plaintiff fell thereon. The decision states:

"We concur with the learned trial judge in the view that no legal cause of action is set forth in the complaint. It is not alleged that the use of the sidewalk was an improper one in that the vehicles were not proper to be so used or that the crossing itself was not a lawful one and suitable for the purpose. The use, therefore, by the company was that use which every occupant of premises with a driveway therefrom crossing the sidewalk into the public highway exercises, each differing in degree perhaps. It was the same lawful use, though different in kind, that the pedestrian exercises when he travels the sidewalk longitudinally or in crossing. This being true the case falls within the well-defined class of cases which absolves the user from liability for conditions imposed by nature where no other and further interference with the course of nature than that exercised by the defendant exists.

"It is well known that travel upon streets and sidewalks after falls of snow disturbs the integrity of the original snow-fall, and that such disturbance tends to cause alternate thawing and freezing which might not otherwise exist. This is precisely what is alleged to have occurred in the present case. The snow had accumulated through natural forces. The passing back and forth of the vehicles disturbed its original condition. This, as day and night succeeded each other, tended to cause the icy condition complained of. The result was that to be expected, whether, as in this instance, by using vehicles crossing it, or, as in other cases, by pedestrians using it as a foot walk. In the absence of an attack on the construction of the sidewalk itself or in the lawfulness of its use, the defendant was not responsible for consequences in the exercise of that lawful right."

In Daley v. Sears, Roebuck & Co., 90 F. Supp. 561 (N. D. Ohio E. Div.), the complaint alleged plaintiff's fall was caused by defendant's negligence in failing to take steps to reduce the icy condition of a sidewalk, created by the passage of automo-

biles between the street and the parking lot. Plaintiff alleged it was defendant's duty to remove the icy ridges and unusually slippery areas from the sidewalk over which the automobiles passed. It was not alleged the automobile traffic passing over the sidewalk in response to defendant's offer of parking space for customers was wrongful or illegal. The only alleged basis for a duty to remove the ice was that the sidewalk was being put to "excessive use." A motion to dismiss was sustained on the ground the complaint failed to state a cause of action. Affirmed, 182 F.2d 347, C. A., 6th Cir.

In Massey v. Worth, 39 Del. (9 W. W. Harr.) 211, 218, 222, 223, 197 A. 673, 676, 677, 678, plaintiff alleged he fell upon the sidewalk crossed by defendant's driveway, upon which snow had fallen and which defendant had permitted to become packed down and made smooth and slippery ice by the passage of vehicles over it and that defendant had failed to abate this condition so caused by his (negligent) use or permitted use of the sidewalk. In affirming an order sustaining a demurrer the court stated:

"* * * an owner or occupant of property along a public highway has the undoubted right to use it in a reasonable and proper manner, as a means of access to and from his property, whether he travels on foot, in vehicles, or otherwise [citations]; and this is generally true, though, in exercising that right with vehicles, he must drive across a sidewalk composing a part of the public highway. [Citation] * * *

"The declaration does not allege, and, therefore, the demurrer does not admit that the defendant's use, or permitted use, of the sidewalk at the entrance to his driveway was in any sense unusual, improper, or unreasonable, either in the kind of vehicles used, the manner of their use, or otherwise. True, there was a natural fall of snow on the sidewalk, but that would not prevent its use by the defendant in a proper manner as a public highway, and as a means of access to his property. [Citation]

"So far as appears, his use was merely that use which every occupant of premises, with a driveway leading therefrom, crossing the sidewalk into the public highway, exercises. Seemingly, it was the same lawful use, though slightly different in kind,

that a pedestrian exercises when he travels along a sidewalk, or crosses it, in going to his own property. [Citation]

"The declaration, therefore, does not show that the defendant violated any duty owed to the plaintiff, or that any actionable blame can be attached to his acts, even though he created a hazardous condition by his use of the sidewalk in question [citation]."

Hale v. City of Knoxville, 189 Tenn. 491, 499, 226 S.W.2d 265, 268, 15 A. L. R.2d 1283, was an action for damages for a fall upon an ice covered public sidewalk at the entrance to a public parking lot. Although the case is not here directly in point it contains the following applicable statement: "As abutting property owners or occupants, the defendant Operators owed pedestrians no duty to clean the sidewalks."

The only other case cited in the majority opinion is Bentson v. Berde's Food Center, 231 Minn. 451, 44 N.W.2d 481, 22 A. L. R.2d 733, 736, 737, which involved the alleged formation of ice upon a sidewalk in front of a store building from water from a defective cornice or from water from ice used by the storekeeper for cooling meats and vegetables. The jury returned a verdict for the owner of the building and against the storekeeper who appealed. The court held the evidence insufficient to sustain a verdict against the storekeeper. The majority opinion in the case at bar cites the Bentson case, which does not involve a driveway across a sidewalk, but the majority overlooks the several other Minnesota cases which do involve such driveways and are relied upon by appellant.

McDonough v. City of St. Paul, 179 Minn. 553, 556, 230 N.W. 89, 90, involved a fall upon a private driveway across a public sidewalk from which the snow had not been removed during the winter, and which had become hard, icy and irregular. Vehicles passing over the driveway had cut ruts across the sidewalk nearly a foot deep. The court stated the accident was directly attributable to the broken, irregular and dangerous condition of the surface caused by the wheels of vehicles and the feet of pedestrians. Defendant city contended defendant abutting owner was responsible for the dangerous condition caused by vehicles, and should have been required to reimburse

the city. In overruling this contention the court held, in part, that the dangerous condition resulted solely from travel which created holes and ridges in the snow and ice, which had accumulated from natural causes. "Lot owners are not liable for injuries to pedestrians resulting from such causes."

The only Minnesota decision brought to my attention in which the abutting owner or occupant was held liable for damages resulting from a slippery driveway is Graalum v. Radisson Ramp, 245 Minn. 54, 71 N.W.2d 904. There a parking garage was located in a congested area. Four thousand pedestrians used the sidewalk each hour between 4 and 6 p. m., and at noon. At other times the pedestrian load varied from 2300 to 2500 per hour. About 700 cars entered and again used the driveway in leaving the garage each day. This interfered with and unduly burdened the normal function of the sidewalk. The interference was not merely one of degree as to volume but also as to kind in that the sidewalk was frequently used as the temporary parking place for motorists who could not proceed while blocked by preceding vehicles and the driveway area was frequently used not only for normal automobile passage but also as a part of defendant's parking facilities. Such use was extraordinary in degree. The jury could find defendant breached the duty it owed the public to exercise reasonable care to provide a safe passage, by blocking the sidewalk and leaving available only a route over a pronounced incline which was icy and slippery.

The Graalum case was distinguished in Brittain v. City of Minneapolis, 250 Minn. 376, 391, 84 N.W.2d 646, 656, an action against the city, the Standard Oil Company and the operator of its service station, for damages from a fall upon a sidewalk and driveway which had become defective as a result of the sinking of some slabs. The court stated: "Since a municipality retains the primary duty and responsibility with respect to the maintenance and repair of public sidewalks and cannot shift said responsibility to the abutting occupant or property owner, it is clear that the abutting owner or occupant upon a street or sidewalk is not liable for any defect therein unless created by him or his agents or servants."

The footnotes to Rudd v. Lyceum Dramatic Productions, Inc., 250 Minn. 328, 331, 85 N.W.2d 61, 63, refer to the Minnesota decisions hereinbefore considered and to other pertinent decisions of that court. In the Rudd case plaintiff fell upon rough ice on the sidewalk in front of the Lyceum. It was contended defendants negligently permitted moisture to run down drainpipes and drip onto the sidewalk, which water, together with the snow and water on the sidewalk, froze and created the hazardous condition. The decision states that as a general rule, in the absence of statute, the abutting owner is not liable to pedestrians for failure to keep the sidewalk safe from the hazards of snow or ice which have naturally accumulated thereon. "This is true even though dangerous ridges are formed as a result of normal vehicular or pedestrian traffic."

III. The majority opinion states:

"We do not hold that the ordinary use of a private driveway in the ordinary manner may in all cases create a nuisance or legal hazard even though the natural surface of snow and ice thereon may be slightly changed. Whether or not a dangerous situation or nuisance is created thereby is a question for a jury to determine under proper instructions, as in this case, where, according to the jury's verdict, snow and slush not originally there were deposited on the crossing in substantial amounts and made hazardous by vehicles of the defendant, its employees and customers."

This paragraph could be interpreted to mean evidence of a substantial change in the surface of snow and ice upon a private driveway across a public sidewalk would be sufficient to require submission to a jury of the question whether it created a dangerous situation or a nuisance.

However, the next paragraph of the majority opinion states:

"If a private residential driveway across a public sidewalk were involved and if it were used as such driveways are ordinarily used and no unusual or unnatural hazard were created other than necessarily accompanies normal use we would be disposed to hold otherwise. We are inclined to say that a slick

or rough spot on a private driveway, resulting from normal and natural use, where negligence is not involved, would not support a verdict for plaintiff."

This paragraph suggests a different rule for private residential driveways. The majority opinion does not explain why the abutting owner of a residential private driveway across a sidewalk should not be subject to the same rules as any other abutting owner of such a driveway. Nor have I found any other decision which provides for such preferential treatment.

The holding of the majority opinion upon the basic proposition of the sufficiency of the evidence is contrary to the legal principles upon which our decisions are based and contrary to the great weight of authority elsewhere. No apposite decision of any court, brought to my attention, supports it. I believe this court should have continued to follow the well-established general rule.

GARFIELD and THOMPSON, JJ., join in this dissent.